KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-4716
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr1167-BEN |
| | ) | |
| Plaintiff, | ) | **RESPONSE AND OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTIONS:** |
| v. | ) | |
| | ) | **(1) TO COMPEL DISCOVERY;** |
| | ) | **(2) TO PRESERVE EVIDENCE; AND** |
| GRANT YEROOMIAN, et. al., | ) | **(3) TO FILE FURTHER MOTIONS** |
| | ) | |
| | ) | Date: June 23, 2008 |
| Defendant. | ) | Time: 2:00 p.m. |
| | ) | Court: The Hon. Roger T. Benitez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery, Preserve and Re-Weigh Narcotics, and File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

//

//

//

//

**I**

**STATEMENT OF FACTS**

**A.    Defendants' Arrest**

On March 29, 2008, at approximately 9:30 p.m., Grant Yeroomian, Joseph Shanoian, and Kamsar Gevorgyan ("Defendants") applied for entry into the United States at the San Ysidro Port of Entry. Defendant Shanoian was driving a gold Toyota Camry; Defendants Yeroomian and Gevorgyan were riding as passengers. Defendants Yeroomian and Shanoian, both United States citizens, presented U.S. passports to Customs and Border Protection ("CBP") Officer Alfredo Horlador. Defendant Gevorgyan presented an I-551 card. When Officer Horlador swiped Yeroomian's passport and Gevorgyan's I-551 card, he received a computer alert as to each that they were possible narcotics couriers. Officer Horlador asked Defendants where they were going, and they said they were going to Glendale, California. Officer Horlador referred the vehicle and passengers to secondary inspection.

In the vehicle secondary lot, CBP Officers Alfonso Ortiz and Delorean Dhillon conducted a more intensive inspection of the vehicle. They found two suitcases in the trunk of the vehicle. The suitcases contained male clothing. The suitcases were unusually heavy and appeared to have been tampered with because there were tool marks on all of the screws. Officer Dhillon tapped the bottom of a suitcase and it felt solid. He also noticed that there was a space discrepancy in the wall of the suitcase. Officer Ortiz had both suitcases x-rayed. The x-ray revealed that there was something in the lining of the suitcases. Officer Ortiz used a knife to cut the linings of the suitcases and discovered packages wrapped in vacuum sealed bags. He cut into the packages and discovered a black tar-like substance. A field test of the black tar-like substance was inconclusive.

The total weight of the black tar-like substance was 8.95 kilograms (19.69 pounds). The substance was later tested at the Drug Enforcement Adminstration Southwest Laboratory and tested positive for opium. The vehicle was registered to Serjik Yeroomian, Defendant Grant Yeroomian's son.

**B.    Defendants' Post-Arrest Statements**

**1.    Defendant Shanoian**

At approximately 2:08 a.m. on March 30, 2008, Defendant Shanoian was read his Miranda rights in the English language by Immigration and Customs Enforcement Agent Josh Gallion and Timothy

Dwyer. He agreed to waive those rights and speak with agents without the presence of an attorney.

Shanoian said that at approximately 11:30 a.m. on March 29, 2008, he left Glendale with Yeroomian and Gevorgyan. They drove to the airport in Tijuana where Yeroomian met with a Persian man wearing jeans and a jacket. He saw Yeroomian take two black suitcases from the Persian man and place them into the trunk of the vehicle. He said that the Persian man told Yeroomian to take the suitcases to California, where Yeroomian was to then return them to the Persian man. Yeroomian then told Shanoian to drive the vehicle because he was tired, and gave Shanoian directions to the San Ysidro Port of Entry.

While waiting in the secondary inspection area, Yeroomian told Shanoian that he overheard CBP officers discussing bringing a narcotics detector dog over. Yeroomian then told Shanoian that the Persian man might have put drugs into the suitcases. Shanoian denied having previously known about the drugs in the suitcases.

**2.      Defendant Gevorgyan**

On March 30, 2008, at approximately 4:16 a.m., Gevorgyan was read his Miranda rights in Armenian by Agents Gallion and Dwyer, as interpreted by Zivart Balikijan, an Armenian interpreter. Gevorgyan agreed to waive his rights and speak with the agents without an attorney present.

Gevorgyan stated that he, Yeroomian and Shanoian left Yeroomian's house at around 11:00 a.m. on March 29, 2008 to go sightseeing in Tijuana. He said they did not meet with anyone in Mexico and denied going to the airport in Tijuana. Gevorgyan said the vehicle belongs to Yeroomian's son.

After further questioning, Gevorgyan stated that they did go to the airport in Tijuana. He said Yeroomian met with a man at the airport and spoke to him in Persian. Gevorgyan said he did not hear what they discussed and did not know what was in the suitcases.

**3.      Defendant Yeroomian**

On March 30, 2008, at approximately 5:50 a.m., Yeroomian was read his constitutional rights in Armenian by Agents Gallion and Dwyer, as interpreted by Zivart Balikijan, an Armenian interpreter. Yeroomian indicated that he was not willing to make a statement. In the administrative processing area, Yeroomian made voluntary statements through the interpreter that he was only a guest in the car and did not drive. He said that unless somebody contradicted his story, he didn't want to talk. He then said

that he, Gevorgyan and Shanoian met with a man named Sean Aslani at the airport in Tijuana.

**C.**    **Defendant Yeroomian's Violation of Bond Conditions**

On April 15, 2008, Defendant Yeroomian was released from custody on a $300,000 bond secured by real property. One of the conditions of pre-trial release required Defendant Yeroomian to surrender his passport and not to travel outside the Southern and Central Districts of California.

On April 30, 2008, unbeknownst to the Government, Defendant applied for a new United States passport at Mannia's Passport Services in Glendale, California. On the application, Defendant Yeroomian indicated that his passport had been "lost." He indicated his intention to travel to Armenia on May 10, 2008.

The next day, on May 1, 2008, Magistrate Judge Anthony J. Battaglia held a bond hearing during which Defendant Yeroomian was reminded to surrender his passport to his pre-trial services supervising officer. On May 1, 2008, Defendant received his new passport from the Department of State. On May 7, 2008, Defendant surrendered his old passport to his pre-trial services supervising officer. He stated he had no other passports. On May 8, 2008, pursuant to a search warrant issued in the Central District of California, agents from Immigration and Customs Enforcement conducted a search of Defendant Yeroomian's house. They found the new U.S. passport, an Iranian passport, and home loan documents showing that Defendant borrowed $100,000 against his house at 830 E. Lomita, Glendale, California.

On May 8, 2008, Magistrate Judge Anthony J. Battaglia signed an arrest warrant based on Yeroomian's violation of his condition of pre-trial release, specifically, his failure to surrender all his passports. On May 13, 2008, a magistrate judge in the Central District of California ordered Defendant detained and removed to the Southern District of California.

## II

## DEFENDANT'S MOTIONS TO COMPEL DISCOVERY

The Government produced 153 pages of discovery for all Defendants on April 25, 2008, including the reports from the Customs and Border Protection and Immigration and Customs Enforcement, photographs of the vehicle, suitcases and the narcotics, as well as DVD recordings of each of the Defendants' post-arrest statements. On May 14 and May 16, 2008, the Government produced an additional 3 and 4 pages of discovery, respectively, to Defendant Yeroomian related to Yeroomian's

1   application for a passport and the value of his home.  On May 19, 2008, the Government provided an

2   additional 90 pages of discovery to Defendant Yeroomian, consisting primarily of copies of materials

3   found during a search of Defendant's home which occurred after he violated his conditions of bail.  On

4   May 19, 2008, the Government also provided copies of Defendants Yeroomian and Shanoian's jail calls

5   to their respective attorneys.  On June 4, 2008, the Government provided copies of a subset of Defendant

6   Yeroomian's jail calls to Defendant Gevorgyan.

7   **(1)    Defendant's Statements**

8       The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide

9   to Defendant the substance of Defendant's oral statements and written statements.  (Unless otherwise

10  noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.)  The Government

11  has produced to all Defendants a copy of all the post-arrest video-taped statements of themselves and

12  each other.  The Government also provided a CD of each Defendant's jail calls to that individual.

13  Specifically, with respect to Defendant Gevorgyan, the Government provided to him copies of jail calls

14  made from Defendant Yeroomian's account which, based on the substance of the phone call, appeared

15  to include statements made over the phone by Defendant Gevorgyan.  As such, the Government has

16  produced all of the Defendants' statements that are known to the undersigned Assistant U.S. Attorney

17  at this date.  If the Government discovers additional oral or written statements that require disclosure

18  under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

19  **(2)    Arrest Reports, Notes, and Dispatch Tapes**

20      The Government has provided Defendants with all known reports related to Defendant's arrest

21  in this case.  The Government is not aware at this time of the existence of any dispatch tapes relevant

22  to this case.  The Government will continue to comply with its obligation to provide to Defendant

23  reports subject to Rule 16(a)(1)(A).

24      The Government has no objection to the preservation of the agents' handwritten notes.  See

25  United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes

26  of interviews of an accused or prospective government witnesses).  However, the Government objects

27  to providing Defendant with a copy of the rough notes at this time.  The Government is not required to

28  produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as

1    defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of

2    a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer,

3    618 F.2d 605, 606-07 (9th Cir. 1980).  The notes are not Brady material because, as discussed further,

4    the notes do not present any material exculpatory information or any evidence favorable to Defendant

5    that is material to guilt or punishment.  If, during a future evidentiary hearing, certain rough notes

6    become particularly relevant, the notes in question will be made available to Defendant.

7    **(3)    Brady Material**

8         The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose

9    material exculpatory information or evidence favorable to Defendant when such evidence is material

10   to guilt or punishment.   The Government recognizes that its obligation under Brady covers not only

11   exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf

12   of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley,

13   473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the

14   defense.  Bagley, 473 U.S.  at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is

15   material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the

16   evidence been disclosed to the defense, the result of the proceeding would have been different.'"

17   Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality

18   is based on the "suppressed evidence considered collectively, not item by item."  Kyles v. Whitley, 514

19   U.S. 419, 436-37 (1995).

20        Brady does not, however, mandate that the Government open all of its files for discovery.  See

21   United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United

22   States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United

23   States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other

24   sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the

25   defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999)

26   amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

27   Attorney could not reasonably be imputed to have knowledge or control over.  See United States v.

28   Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).   Brady does not require the Government "to create

exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir.

1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."

United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(4)    Defendant's Prior Record**

The Government has provided all information in its possession related to Defendants' prior

records.  Specifically, the Government has provided Defendant Yeroomian with documentation,

including a "rap sheet," indicating his prior arrests and conviction for opium trafficking.  The

Government has thereby fulfilled its duty of discovery under Rule 16(a)(1)(D).[1/]  See United States v.

Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990).  To the extent the Government obtains additional

documents reflecting Defendants' prior criminal records, the Government will provide those to

Defendants.

**(5)    Any Proposed 404(b) Evidence**

The Government will disclose in advance of trial the general nature of any "other bad acts" or

"other acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b).

Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the

evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably

intertwined."  United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(6)    Evidence Seized**

The Government has produced copies of documents seized both at the time of the Defendants'

arrest and materials seized from Defendant Yeroomian's home during the post-arrest search.  The

Government will continue to comply with Rule 16(a)(1)(E)[2/] in allowing Defendant an opportunity, upon

reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession,

custody, or control, and that is either material to the preparation of Defendant's defense, or is intended

---

[1/]    Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B).  The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

[2/]    Defendant requests this discovery pursuant to Rule 16(a)(1)(c) [sic].  Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E).

1    for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs

2    to Defendant.

3    **(7)**    <u>**Request for Preservation of Evidence**</u>

4         The Constitution requires the Government to preserve evidence "that might be expected to play

5    a significant role in the suspect's defense." <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984). On April

6    29, 2008, this Court signed two orders requiring the United States to preserve the narcotics and the

7    vehicle involved in this case. On May 8, 2008, the undersigned AUSA forwarded these letters to

8    Department of Homeland Security Special Agent in Charge Miguel Unzueta with a request to preserve

9    the evidence in this case pursuant to this Court's orders. The Government has therefore made every

10   effort to preserve the evidence deemed to be relevant and material to this case. Any failure to gather

11   and preserve evidence, however, would not violate due process absent bad faith by the Government that

12   results in actual prejudice to the Defendant. <u>See</u> <u>Illinois v. Fisher</u>, 540 U.S.1174, 124 S.Ct. 1200 (2004)

13   (<u>per</u> <u>curiam</u>); <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988); <u>United States v. Rivera-Relle</u>, 322

14   F.3d 670 (9th Cir. 2003); <u>Downs v. Hoyt</u>, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

15   **(8)**    <u>**Tangible Objects**</u>

16         The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3] in allowing

17   Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and

18   tangible objects that are within its possession, custody, or control, and that is either material to the

19   preparation of Defendant's defense, or is intended for use by the Government as evidence during its

20   case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not,

21   however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th

22   Cir. 1984).

23   **(9)**    <u>**TECS Reports**</u>

24         Reports from the Treasury Enforcement Communication System ("TECS") are not subject to

25   Rule 16(c) because the reports are neither material to the preparation of the defense, nor intended for

26

27 _____

28         [3]      Defendant makes this request under Fed. R. Crim. P. 16(a)(2)(c) [sic]. Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E) which applies to the discovery of documents and objects.

1   use by the Government as evidence during its case-in-chief. If the United States intends to introduce

2   TECS information at trial in its case-in-chief, discovery of the relevant TECS reports will be made at

3   least by the time of the filing of its trial memorandum.

4           Evidence that the Government intends to use for impeachment or rebuttal is not considered

5   evidence for use in the Government's case-in-chief. *See* United States v. Givens, 767 F.2d 574, 582-583

6   (9th Cir. 1985); United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991) (holding that Government

7   is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against

8   a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that

9   trial court order requiring Government to disclose "any and all impeachment evidence . . . which tends

10  to negate guilt" including rebuttal evidence exceeded scope of court's authority under Rule 16). The

11  Government at this time does not intend to use TECS evidence as part of its case-in-chief, but reserves

12  the right to impeach Defendant under Rule 607 with TECS evidence should it become relevant during

13  Defendant's case.

14          Rule 16 also permits discovery of information that is "relevant to the development of a possible

15  defense." United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984). To obtain discovery under Rule 16,

16  a defendant must make a prima facie showing of materiality. United States v. Mandel, 914 F.2d 1215,

17  1219 (9th Cir. 1990). A defendant must make a specific request for an item and articulate how it is

18  helpful to the defense. *See* United States v. Olano, 62 F.3d 1180, 1203 (9th Cir. 1995). "Neither a

19  general description of the information sought nor conclusory allegations of materiality suffice; a

20  defendant must present facts which would tend to show that the Government is in possession of

21  information helpful to the defense." Mandel, 914 F.2d at 1219. Here, although Defendant has made

22  a specific request for the TECS reports, he has not made any showing of materiality.

23  **(10)    Opportunity to Weigh , Count, View and Photograph Contraband**

24          The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

25  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects,

26  including the contraband, seized that is within its possession, custody, or control.

27  **(11)    DEA-7 Form**

28          The United States already produced a copy of the completed DEA-7 analysis as pages 35-36 of

                                9                    Criminal Case No. 08cr1167-BEN

1    discovery.

2    **(12)    Narcotics Detector Dog Information**

3        There were no narcotics detector dogs involved in this case.

4    **(13)    Expert Witness**

5        The Government will provide notice prior to trial of any expert witnesses that will be called to

6    testify at trial.

7    **(14)    Report of Scientific Tests or Examinations**

8        At this time, the only scientific test that the Government is aware of is an analysis of the opium

9    by the DEA laboratory.  As indicated above, those results have been produced to Defendants.  If the

10    Government becomes aware of additional scientific tests or experiments, it will provide Defendants with

11    the results of any scientific tests or examinations in accordance with Rule 16(a)(1)(F)[4/] when those tests

12    results are received.

13    **(15)    Henthorn Material**

14        The Government will comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and

15    request that all federal agencies involved in the criminal investigation and prosecution review the

16    personnel files of the federal law enforcement inspectors, officers, and special agents whom the

17    Government intends to call at trial and disclose information favorable to the defense that meets the

18    appropriate standard of materiality.  <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u>

19    <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S.

20    Attorney is uncertain whether certain incriminating information in the personnel files is "material," the

21    information will be submitted to the Court for an <u>in camera</u> inspection and review.

22    **(16)    Evidence of Bias or Motive to Lie**

23        The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide evidence that could

24    be used to impeach Government witnesses including material information regarding demonstrable bias

25    or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the

26

27    _____

28        [4/]        Defendant makes this request pursuant to Rule 16(a)(1)(D).  Because that sub-section pertains to a defendant's prior record, the United States interprets this as a request under Rule 16(a)(1)(F), which is the sub-section pertaining to examinations and tests.

part of prospective government witnesses.  If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(17)    Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

**(18)    Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses.  <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(19)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic, because such information  is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(20)    Witness Addresses**

The Government has provided Defendant with the reports containing the names, work addresses, and telephone numbers of the inspectors, officers and special agents who asked questions of Defendant and found the marijuana in the vehicle.  In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United</u>

1    States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709

2    (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v.

3    Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant

4    access to government witnesses whose telephone numbers and addresses the government refused to

5    provide because defendant knew the identities of the government witnesses and presumably knew their

6    telephone numbers or could have contacted them through the exercise of due diligence).

7    **(21)    Name of Witnesses Favorable to the Defendant**

8    The Government is not aware of the names of any witnesses favorable to the Defendant's case.

9    If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will

10    be promptly provided.

11    **(22)    Statements Relevant to the Defense**

12    The Government will provide all statements relevant to Defendant as required by Rule 16,

13    Brady, and Jencks.    The Government is not all possible information and evidence regarding any

14    speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam)

15    (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory

16    evidence are not subject to disclosure under Brady).

17    **(23)    Giglio Information**

18    An agreement that the Government makes with a witness for testimony in exchange for money

19    or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure

20    as impeachment evidence under Brady and Giglio.  See United States v. Kojayan, 8 F.3d 1315, 1322-23

21    (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).    At this time, the

22    Government is not aware of any Giglio information related to this case.  If the Government discovers

23    the existence of Giglio information, the information will be provided to the Defendant.

24    **(24) & (25)    Informants and Cooperating Witnesses**

25    If the United States determines that a cooperating, percipient witnesses will be testifying against

26    Defendants at trial, or if there is a confidential informant whose identity is "relevant and helpful to the

27    defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's

28    identity to the Court for in-chambers inspection.  See Roviaro v. United States, 353 U.S. 53, 60-61

(1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997). At this time, the United States is not aware of any information derived from any informants or other sources which exculpates or tends to exculpate Defendants.

**(26)   Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (<u>citing Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)). There is no applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act.

**III**

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.   All Evidence That Defendants Intends To Introduce In Their Case-In-Chief**

Since the Government will honor Defendants' requests for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which

are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which she intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B.      Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendants)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendants. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**V**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: June 18, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/***Rebecca Kanter***
REBECCA S. KANTER
Assistant United States Attorney
Attorneys for Plaintiff

United States of America

Criminal Case No. 08cr1167-BEN

1
2
3
4
                    UNITED STATES DISTRICT COURT

5
                  SOUTHERN DISTRICT OF CALIFORNIA

6
    UNITED STATES OF AMERICA,            )   Criminal Case No. 08cr1167-BEN
7                                        )
                            Plaintiff,   )
8                                        )   CERTIFICATE OF SERVICE
                       v.                )
9                                        )
    GRANT YEROOMIAN, et. al,             )
10                                       )
                            Defendant.   )
11   _____ )

12
    IT IS HEREBY CERTIFIED THAT:

13
          I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of
14  age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

15        I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND
    OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the
16  District Court using its ECF System, which electronically notifies them.

17        1)    Michael Artan
          2)    Bernie Skomal
18        3)    Benjamin Lechman

19        I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
    Service, to the following non-ECF participants on this case:
20
          None
21
    the last known address, at which place there is delivery service of mail from the United States
22  Postal Service.

23        I declare under penalty of perjury that the foregoing is true and correct.

24        Executed on June 18, 2008.

25                                          /s/ ***Rebecca Kanter***
                                            REBECCA S. KANTER
26
27
28

                              16          Criminal Case No. 08cr1167-BEN